# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMED TAWHID AL-SAFFY )<br>1705 Prairie Court )<br>Severn, MD  21144 )<br>   Plaintiff, )<br>)<br>  v. )<br>)<br>THOMAS J. VILSACK, )<br>SECRETARY, )<br>U.S. Dept. of Agriculture )<br>)<br>and )<br>)<br>JOHN F. KERRY, )<br>SECRETARY, )<br>U.S. Dept. of State ) | Civil Action No.<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff, Mohamed Tawhid Al-Saffy, by and through his undersigned counsel, complains of the Defendants as follows:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because more than 180 days have passed since Plaintiff filed his formal EEO complaints of discrimination.  Venue is proper because the unlawful employment practices were committed in this judicial district, the relevant employment records are maintained and administered in this judicial district and the Defendants' principal offices are located in this judicial district.

## PARTIES

2. Plaintiff Mohamed Tawhid Al-Saffy is a resident of Severn, Maryland.

3. On information and belief, Defendant, Thomas J. Vilsack, Secretary, U.S. Department

of Agriculture, is named in his official capacity as Secretary of the Agency that employed Plaintiff within the U.S. Government.

4.  On information and belief, Defendant, John F. Kerry, Secretary, U.S. Department of State, is named in his official capacity as Secretary of the Agency that took the actions complained of by the Plaintiff.

## FACTS

5.  This action is filed under Title VII of the Civil Rights Act of 1964 and alleges that Defendants discriminated against Dr. Al-Saffy based on his religion (Muslim), his national origin (Egyptian) and in reprisal for filing EEO complaints. Dr. Al-Saffy further alleges discrimination-based harassment.

6.  Dr. Al-Saffy's first name is Mohamed, which is a popular Muslim male name.

7.  Dr. Al-Saffy has been employed by the Foreign Agricultural Service (FAS), U.S. Department of Agriculture (USDA) since December 2001.

### Events Leading to First EEO Complaint

8.  In 2008, Dr. Al-Saffy applied for the position of Director for the Riyadh, Saudi Arabia and Yemen Agricultural Trade Offices ("ATO positions").

9.  After learning that Dr. Al-Saffy applied for the ATO positions, Ms. Susan Schayes, former Assistant Deputy Administrator for the Office of Foreign Service Operations (OFSO), FAS/USDA, told Mr. Franklin Lee, former Deputy Administrator for OFSO, that she was against considering Mr. Al-Saffy for the ATO positions because in her opinion, he was not qualified. Ms. Schayes did not make similar comments about any of the non Muslim and non Egyptian candidates who applied for ATO positions.

10.     At the time Dr. Al-Saffy applied for the ATO positions, he had 34 years of experience related to agricultural development including 10 years of experience working in the region. In addition, Saudi Arabia was one of the countries that Dr. Al-Saffy focused on in his dissertation for his Ph.D. Ms. Schayes was well aware of Dr. Al-Saffy's credentials.

11.     In or about October or November 2008, Mr. Al-Saffy was selected for the ATO positions. After Mr. Al-Saffy was selected, Ms. Schayes told Mr. Lee that she considered Dr. Al-Saffy unfit for the ATO positions. Ms. Schayes had no reason to consider Dr. Al-Saffy unfit for the ATO positions.

12.     On April 12, 2009, forty-eight hours before Dr. Al-Saffy's departure date for Saudi Arabia, Ms. Schayes placed his travel on hold. She told Dr. Al-Saffy that the reason she was placing his travel on hold was because the Foreign Service Union had filed a complaint claiming that it was improper for civil service employees to be selected for ATO positions. However, Ms. Schayes allowed a non Muslim non Egyptian civil service employee who had been selected for an ATO Director position in Japan to continue his training in preparation for his assignment.

### First EEO Complaint Against Dept. of Agriculture

13.     In April 2009, Dr. Al-Saffy filed an EEO complaint against OFSO/FAS management because his travel to Saudi Arabia had been placed on hold.

14.     In May 2009, Ms. Schayes changed her mind and allowed Dr. Al-Saffy to travel to Saudi Arabia to begin his assignment as ATO Director at the U.S. Embassy in Saudi Arabia and the U.S. Embassy in Yemen. As a result, Dr. Al-Saffy did not pursue his EEO complaint.

### Events Leading to Second EEO Complaint Against Dept. of Agriculture

15. Dr. Al-Saffy began working at the ATO positions in May 2009. Although Dr. Al-Saffy was based in Saudi Arabia, he also served as the ATO Director at the U.S. Embassy in Yemen.

16. In or about June 2009, Dr. Al-Saffy travelled to Yemen to conduct interviews to hire a Locally Employed Staff ("LES") as an agricultural specialist in the ATO, U.S. Embassy, Yemen.

17. During that visit, Dr. Al-Saffy met Roland McKay, formerly an Economic/Commercial Officer employed by the State Department at the U.S. Embassy, Yemen. Mr. McKay asked Dr. Al-Saffy about his national origin.

18. In or about July 2009, Dr. Al-Saffy hired an LES to work in ATO Yemen as an agricultural specialist. The LES reported to Dr. Al-Saffy and was to receive all of his assignments and training from Dr. Al-Saffy.

19. Dr. Al-Saffy gave the LES an orientation, on the job training in Yemen as well as for a week at ATO in Saudi Arabia. The LES had more than enough work to keep him busy during his work hours.

20. In or about October 2009, Dr. Al-Saffy located $4.2 million in food aid funds that had been missing in Yemen since 2006.

21. From in or about October 2009 to in or about August 2010, Mr. McKay interfered with Dr. Al-Saffy's work in Yemen.

22. Even though Mr. McKay did not supervise the LES, he assigned work to the LES, took the LES on a business trip and granted the LES overtime, compensatory time and sick leave. All of these actions were taken without the knowledge and prior approval of Dr. Al-

Saffy. Because Mr. McKay was assigning work to the LES, the LES did not have enough time to complete Dr. Al-Saffy's assignments.

23. In December 2009, Mr. McKay sent an email suspending Dr. Al-Saffy's visits to Yemen even though he had no authority to do this, given that Dr. Al-Saffy was Director of the ATO in the U.S. Embassy, Yemen and the representative of the U.S. Secretary for Agriculture in Yemen. After receiving Mr. McKay's email, Dr. Al-Saffy sent an email to State Department employee Angie Bryan, Former Deputy Chief of Mission in U.S. Embassy, Yemen, stating that he was considering filing an EEO complaint regarding Roland McKay.

24. Mr. McKay interfered with the allocation of the food aid funds that Dr. Al-Saffy had located and was responsible for allocating to agricultural development projects to achieve food security in Yemen.

25. Mr. McKay also communicated directly with Dr. Al-Saffy's first line supervisor, Ms. Kim Svec, Area Director, Africa and Middle East Division, on matters concerning the operations of the ATO in Yemen.

26. Mr. McKay's interference in Yemen was disruptive, undermined Dr. Al-Saffy's authority and negatively impacted Dr. Al-Saffy's work in Yemen. Dr. Al-Saffy complained to Ms. Svec as well as to Ms. Schayes on numerous occasions between October 2009 and August 2010, however, neither took any action to prevent Mr. McKay's unjustified interference. This shows their collaborative retaliation against Dr. Al-Saffy.

27. In January, 2010, Dr. Al-Saffy travelled to Washington D.C. for rest and recuperation. Ms. Svec scheduled Dr. Al-Saffy for a full day of back-to-back meetings with no breaks on January 26, 2010, even though the normal practice at OFSO is to provide time for breaks including a lunch break.

28. During a meeting with Ms. Schayes on January 26, 2010, Ms. Schayes asked Dr. Al-Saffy if he was Muslim.

29. After returning to Saudi Arabia, Dr. Al-Saffy had several telephone conversations with Ms. Schayes during which she yelled at him for no reason. During a telephone conversation on May 10, 2010, Ms. Schayes told Dr. Al-Saffy to "shush" and abruptly hung up on him while he was speaking.

30. In March 2010, Ms. Svec travelled for the first time to Saudi Arabia and then to Yemen. Although it is common practice for an ATO Director who covers more than one country to travel with the Area Director to the other countries she covers, Ms. Svec did not permit Dr. Al-Saffy to accompany her on her trip to Yemen. During her trip to Yemen, Ms. Svec instructed the LES to contact her directly, thus further diminishing Dr. Al-Saffy's authority as the LES's supervisor.

31. In March 2010, Dr. Al-Saffy tried to make Mr. Stephen Seche, Former Ambassador to Yemen, aware of Mr. McKay's interference in his work responsibilities as ATO Director. However, Mr. Seche was unwilling to listen to Dr. Al-Saffy's complaints.

32. In or about August 2010, Ms. Schayes retired and on August 17, 2010, James Higgiston became Deputy Administrator for OFSO.

33. On August 17, 2010, his first day in office as OFSO Deputy Administrator, Mr. Higgiston sent Dr. Al-Saffy an email informing him that he would no longer be the ATO Director in Yemen. This change scaled down Dr. Al-Saffy's assignment, negatively impacted his reputation and caused damage to his career progress.

**Second EEO Complaint Against Dept. of Agriculture**

34. On September 7, 2010, Dr. Al-Saffy contacted EEO.

35.     Dr. Al-Saffy filed a formal complaint on March 4, 2011, USDA Complaint No. FAS-2010000948.

36.     The following claims were accepted by the Department of Agriculture's Office of Civil Rights:

Whether the agency subjected the Complainant to discrimination and harassment (nonsexual) based on national origin, (Egypt), religion (Muslim) and reprisal (prior EEO activity), when:

1. on unspecified dates, management permitted a Freshman Economic Officer to engage in improper management decisions and interfere in the work of the Agricultural Trade Office (ATO), Yemen; and

2. On August 17, 2010, the Office of Foreign Service Operations (OFSO) managers informed him that ATO Yemen would be reassigned to the Office of Agricultural Affairs (OAA) in Cairo.

**Events Leading to Third EEO Complaint Against Dept. of Agriculture**

37.     In or about August 2011, Dr. Al-Saffy emailed Ms. Svec and Mr. Higgiston requesting a one-year extension of his assignment as the ATO Director in Saudi Arabia.

38.     In general, OFSO routinely approves requests for one-year extensions to ATO assignments.

39.     Dr. Al-Saffy's performance as the ATO Director in Saudi Arabia was outstanding and he had full Ambassadorial support for his work and remarkable achievements in Saudi Arabia.

40.     On October 20, 2011, Dr. Al-Saffy learned that his request for a one-year extension had been denied.

41.     In order to prevent Dr. Al-Saffy from extending his position as ATO in Saudi Arabia, Mr. Higgiston changed the position from an ATO position to an Office of Agricultural Affairs (OAA) position.  OAA positions can only be filled by Foreign Service employees.  For 24 years, the FAS/USDA office in Saudi Arabia had been an ATO position.

42.     On November 25, 2011, Dr. Al-Saffy asked Ms. Svec and Mr. Higgiston for approval to attend and participate in the United States Saudi Business Opportunities Forum ("Forum") held in Atlanta, GA, from December 5 to December 7, 2011.  The Chairman of the Forum, the Saudi Minister of Commerce and Industry, had invited Dr. Al-Saffy to attend and had also requested that he serve as the moderator for a panel on U.S.-Saudi Agri-Business Relations, as well as be a speaker on U.S. agriculture and the opportunities for Saudi Arabia to achieve food security through enhancement of trade and partnership between U.S. and Saudi Agri-business.  In addition, the Government of Saudi Arabia had agreed to pay for all of Dr. Al-Saffy's travel expenses.

43.     Mr. Higgiston did not approve Dr. Al-Saffy's travel to participate in the Forum and that selected another FAS employee, Lloyd Harbert, to participate instead.

44.     Mr. Harbert, unlike Dr. Al-Saffy, did not work on issues related to Saudi Arabia and U.S. agricultural trade and he did not have experience or background regarding King Abdullah's Agricultural Investment Abroad Initiative.

45.     In or about April/May 2009, Ms. Schayes cancelled the housing lease of Dr. Al-Saffy's predecessor a few weeks prior to Dr. Al-Saffy's arrival to Post and assigned Dr. Al-Saffy and his family a much smaller house. This change was contrary to the Overseas Assignment Guide that provides that if you are the head of post, in most cases your housing will be the same as your predecessor's.

46. The condition of the house assigned to Dr. Al-Saffy and his family was below average in that there were plumbing problems including water leaking from the ceiling in various parts of the house and poor drainage. The plumbing problems and foul smelling stench from the sewer pipes had a negative impact on the health of Dr. Al-Saffy and his family. In addition, the house was not suitable for conducting representational events.

47. Dr. Al-Saffy advised Ms. Schayes of the issues with his housing during his meeting with her on January 26, 2010. Ms. Schayes told Dr. Al-Saffy to contact the Embassy's Housing Board.

48. In or about September 2011, the Housing Board offered to move Dr. Al-Saffy to the house that his predecessor had occupied. However, when Dr. Al-Saffy requested permission to move from OFSO, Ms. Svec denied his request claiming that OFSO could not fund the change in housing.

49. OFSO approved a much larger, brand new and much more expensive house for Dr. Al-Saffy's successor.

50. After Dr. Al-Saffy returned to the United States from Saudi Arabia, he was assigned to the position of International Agriculture Development Specialist, a position with subordinate responsibilities as compared to the ATO Director position that Dr. Al-Saffy previously occupied for more than three years with remarkable achievements and an outstanding performance evaluation from the U.S. Ambassador in Saudi Arabia.

51. At the time Dr. Al-Saffy was placed in the International Agriculture Development Specialist position, he could have been assigned to one of three GS-14 management positions. At around the same time that Dr. Al-Saffy was placed in the International Agriculture Development Specialist position, another employee returning from overseas assignment

received a stretch from a FO-3 (which is equivalent to a GS 13 position) to a GS 14 position. This assignment violated the policy of Washington Assignment Plan.

### Third EEO Complaint Against Dept. of Agriculture

52. On December 4, 2011, Dr. Al-Saffy contacted EEO.

53. Dr. Al-Saffy filed a formal complaint on March 27, 2012, USDA Complaint No. FAS-2012-00399.

54. The following claims were accepted by the Department of Agriculture's Office of Civil Rights:

Whether the Complainant was subjected to discrimination and harassment (nonsexual) based on national origin (Egypt), religion (Islam), and reprisal (prior EEO activity), when:

    1. On October 20, 2011, he learned that his request for a one year extension of his assignment as the Director of the Agricultural Trade Office in Riyadh, Saudi Arabia, had been denied and that another FAS employee had been selected to replace him;

    2. On November 25, 2011, his request to attend and participate in the United States Saudi Business Opportunities Forum, held from December 5 to December 7, 2011, was denied, and instead another FAS employee was selected to attend;

    3. On an unspecified date, management denied his requests to be assigned housing commensurate with his entitlement as "Head of agency," even though the "Housing Board" had identified and offered to move him to more appropriate housing.

55. On August 22, 2012, the following additional claim was accepted:

    4. On June 15, 2012, management assigned him to the position of International Agricultural Development Specialist.

**Additional Evidence of Discrimination and Retaliation by Department of Agriculture**

56. Dr. Al-Saffy's outstanding performance in Saudi Arabia and Yemen including locating the $4.2 million in food aid funds that had been missing since 2006, merited a performance rating of outstanding and a promotion to FO-1. However, on February 18, 2011, Dr. Al-Saffy received an email stating that for fiscal year 2009-2010, the Selection Board had ranked him in the bottom third of the FO-2 officers group. The Selection Board also ranked Dr. Al-Saffy in the bottom third of the FO-2 officers group for fiscal year 2010-2011 even though his performance merited the top ranking. As a result, Dr. Al-Saffy did not receive a meritorious step increase. The Selection Board's decision was directly related to false statements made by Ms. Schayes and Ms. Svec in Dr. Al-Saffy's performance evaluations.

57. In July 2011 and May/June 2012, Ms. Svec, Mr. Higgiston and FAS Associate Administrator Janet Nuzum, blocked Dr. Al-Saffy from working on the planning and preparation for the Saudi Agricultural Trade and Investment Mission (TIM) even though Dr. Al-Saffy had the support of the U.S. Ambassador to Saudi Arabia and Congressman Marlin Stutzman specifically requested a meeting regarding TIM with Secretary Vilsack and Dr. Al-Saffy. Dr. Al-Saffy believes that the agency prevented him from working on the preparation and implementation of TIM because this event would have highlighted Dr. Al-Saffy's achievements and enhanced his career opportunities as this event was going to increase employment in U.S. agricultural sector, enhance agri-businesses partnerships and exports to Saudi Arabia to meet food security goal.

**Events Leading to EEO Complaint Against Dept. of State**

58. While serving as Director for the Riyadh, Saudi Arabia and Yemen ATO, Dr. Al-Saffy sent an email to State Department employee Angie Bryan, Former Deputy Chief of Mission,

stating that he was considering filing an EEO complaint regarding the actions of Roland McKay.

59.     On August 17, 2010, the Department of Agriculture removed Dr. Al-Saffy from the Yemen post and informed him that ATO Yemen would be reassigned to the Office of Agricultural Affairs (OAA) in Cairo.

60.     Dr. Al-Saffy filed an EEO complaint against the Dept. of Agriculture (USDA Complaint No. FAS-2010-00948) that was based in part on his removal from the Yemen post. He requested a hearing and the case was assigned to an EEOC Administrative Judge.

61.     On February 21, 2013, Dr. Al-Saffy received the Dept. of Agriculture's Motion for Summary Judgment in Case No. FAS-2010-00948.

62.     The Dept. of Agriculture's Motion for Summary Judgment includes affidavits from three State Department employees in U.S. Embassy, Yemen—Former Deputy Chief of Mission, Angie Bryan, Former Ambassador to Yemen, Stephen Seche and former Economic Officer Roland McKay.  These statements make it clear that these employees of the State Department at the U.S. Embassy, Yemen, were responsible for Dr. Al-Saffy's removal as Director for the Yemen ATO.

63.     Ms. Bryan's affidavit states that she and the Ambassador communicated their "concerns" about Dr. Al-Saffy to his then supervisor, Kim Svec, and "advocated" for Yemen to be reassigned to someone other than Dr. Al-Saffy.

64.     Mr. Seche's affidavit states that he became convinced that Dr. Al-Saffy's style and manner of interacting with one of his staff members and embassy personnel had become so disruptive and unhelpful that a reassignment to another post was the best outcome for all involved.

65.     The statements of Ms. Bryan and Mr. Seche are false.  These statements damaged Dr. Al-Saffy's career in management at FAS/USDA.  In addition to being removed from the Yemen post, Dr. Al-Saffy was not selected to continue his posting in Saudi Arabia even though Ambassador James Smith, U.S. Ambassador to Saudi Arabia, requested FAS/USDA that he remain in his position.  Instead, Dr. Al-Saffy was forced to return to the United States earlier than he had planned and given a position with no supervisory authority.

66.     According to Ms. Bryan's affidavit, in deciding to advocate for Dr. Al-Saffy's removal, Ms. Bryan and Mr. Seche relied on false information they received from Roland McKay.

67.     Mr. McKay provided false information about Dr. Al-Saffy to Ms. Bryan and Mr. Seche based on Dr. Al-Saffy's race, national origin and religion.  Ms. Bryan and Mr. Seche accepted the false information provided by Mr. McKay as true because of Dr. Al-Saffy's race, national origin and religion.  In addition, Ms. Bryan was retaliating against Dr. Al-Saffy for stating that he would be filing an EEO complaint against Mr. McKay.

68.     Dr. Al-Saffy contacted the State Dept.'s EEO office on or about April 7, 2013.

69.     On or about July 18, 2013, Dr. Al-Saffy filed a formal complaint, Dept. of State Case Number DOS-0243-13.

70.     On October 4, 2013, Dr. Al-Saffy was advised by the Dept. of State that his formal complaint was dismissed in its entirety.

**Count 1**

71.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-70.

72.     By and through their conduct, Defendants subjected Plaintiff to unlawful discrimination based on national origin in violation of Title VII of the Civil Rights Act of

1964.

### Count 2

73. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-72.

74. By and through their conduct, Defendants subjected Plaintiff to unlawful discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964.

### Count 3

75. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-74.

76. By and through their conduct, Defendants discriminated against Plaintiff in reprisal for filing an EEO complaint in violation of Title VII.

### JURY DEMAND

Plaintiff demands a trial by jury on each count in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants on Counts 1-3, and seeks reassignment as ATO Director in the U.S. Embassy, Riyadh, Saudi Arabia, or to another position commensurate with his experience, promotion to GS-15, and compensatory damages to be determined by a jury for pain and suffering, mental anguish, emotional distress, medical expenses and loss of sick and annual leave.  In addition, Plaintiff demands reasonable attorneys' fees.

Date:   October 10, 2013			Alan Lescht & Associates, P.C.

				    ___/s/_ Alan Lescht_____
				    Alan Lescht, DC Bar # 441691
				    Susan L. Kruger, DC Bar # 414566
				    1050 17th Street, N.W., Suite 400
				    Washington, DC  20036
				    202-463-6036
				    202-463-6067 (fax)
				    Attorneys for Plaintiff