UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMED TAWID AL-SAFFY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 13-01562 (RJL) |
| | ) | |
| THOMAS J. VILSACK, in his | ) | |
| official capacity as Secretary, | ) | |
| U.S. Department of Agriculture, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

(July 22, 2014) [Dkt. #10]

Plaintiff Mohamed Tawid Al-Saffy ("Al-Saffy" or "plaintiff") brings this action against Thomas J. Vilsack and John F. Kerry, in their official capacities as Secretaries of the United States Departments of Agriculture ("USDA") and State ("State Department") (together, "defendants"), respectively, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, for religious and national-origin discrimination, and retaliation for filing Equal Employment Opportunity ("EEO") complaints. *See* Complaint ("Compl.") at ¶ 5 [Dkt. #1]. Now before the Court is defendants' Motion to Dismiss. *See* Motion to Dismiss ("Defs.' Mot.") [Dkt. #10]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court GRANTS summary judgment in favor of defendants.

1

**BACKGROUND**

Al-Saffy is a Egyptian-American Muslim who has been employed by the Foreign Agricultural Service ("FAS")—an agency within the USDA—since December 2001. *See* Compl. at ¶¶ 5, 7. In late 2008, Al-Saffy applied, and was selected for the position of Director for the Saudi Arabia and Yemen Agricultural Trade Offices ("ATO positions"). *See* Compl. at ¶ 8.

On the eve of plaintiff's departure for Saudi Arabia, however, Susan Schayes ("Schayes"), the former Assistant Deputy Administrator for the Office of Foreign Service Operations ("OFSO"), placed Al-Saffy's travel on hold. *See* Compl. at ¶¶ 9, 12. Believing that this decision was motivated by religious and national origin discriminatory animus and reprisal, Al-Saffy filed an informal EEO complaint ("2009 Complaint") against OFSO/FAS management on April 15, 2009. *See* Compl. at ¶¶ 9, 12-13; Ex. 1 to Defs.' Mot. at 1 [Dkt. #10-2]. In May 2009, Schayes reversed course and permitted Al-Saffy to travel to Saudi Arabia to begin his assignment as the Director of the Saudi Arabia and Yemen ATOs. *See* Compl. at ¶ 14. On May 22, 2009, Al-Saffy informed the USDA that he was withdrawing the 2009 Complaint. *See id.*; Ex. 1 to Defs.' Mot. at 2.

Shortly after Al-Saffy began work in the ATO positions, he travelled to Yemen to hire an agricultural specialist to work in the Yemen ATO. *See* Compl. at ¶ 16. During his time in Yemen, plaintiff became acquainted with Roland McKay ("McKay")—a State

Department Economic/Commercial Officer at the U.S. Embassy in Yemen. *See* Compl. at ¶ 17. Plaintiff alleges that between October 2009 and August 2010, McKay intentionally interfered with his work in Yemen. *See* Compl. at ¶¶ 21-26. Plaintiff's complaints to Schayes and Kim Svec ("Svec")—plaintiff's front-line supervisor—about McKay's interference allegedly went unanswered. *See* Compl. at ¶ 26. On August 17, 2010, James Higgiston[1] ("Higgiston") informed plaintiff that he would no longer be the Director of the Yemen ATO. *See* Compl. at ¶ 33. On March 4, 2011, plaintiff filed a formal EEO complaint ("2011 Complaint") against the USDA, alleging discrimination and harassment based on national origin, religion, and reprisal. *See* Compl. at ¶¶ 35-36; Ex. 2 to Defs.' Mot. at 1 [Dkt. #10-2].

In August 2011, Al-Saffy emailed Svec and Higgiston requesting a one-year extension of his then assignment as the Director of the Saudi Arabia ATO. *See* Compl. at ¶ 37. Plaintiff learned that his request for a one-year extension was denied on October 20, 2011. *See* Compl. at ¶ 40. On November 21, 2011, plaintiff requested a hearing before the United States Equal Employment Opportunity Commission ("EEOC") on his 2011 Complaint. *See* Ex. 2 to Defs.' Mot. at 5.

Following the denial of his request for a one-year extension, Al-Saffy contended again that he was the victim of religious and national origin discrimination that manifested itself when: (1) Higgiston did not approve plaintiff's travel to participate in

---

[1] Following Schayes's retirement in August 2010, Higgiston replaced her, assuming the position

the United States Saudi Business Opportunities Forum, deciding instead to send another FAS employee; (2) Schayes cancelled the housing lease on the home occupied by plaintiff's predecessor in Saudi Arabia, forcing plaintiff to live in sub-standard housing; and (3) plaintiff, upon his return to the United States, was placed in a position with "subordinate responsibilities" when compared to his prior placement as Director of the Saudi Arabia ATO. *See* Compl. at ¶¶ 43, 45-46, 50. On March 27, 2012, plaintiff filed a formal EEO complaint ("2012 Complaint") against the USDA, again alleging discrimination based on religion, national origin, and reprisal. *See* Compl. at ¶¶ 53-55; Ex. 5 to Defs.' Mot. at 1, 5 [Dkt. #11-1].

On February 21, 2013, the plaintiff received the USDA's Motion for Summary Judgment regarding the 2011 EEOC Complaint. *See* Compl. at ¶¶ 60-61. On March 29, 2013, however, plaintiff sent the EEOC two letters informing it that he no longer wished to pursue hearings on his 2011 or 2012 Complaint, and that he would instead be filing claims in federal court, which he did on October 10, 2013. *See* Ex. 1 to Plaintiff's Opposition ("Pl.'s Opp'n") [Dkt. #14-1]; Ex. 10 to Defs.' Mot. at 2 [Dkt. #11-3]. On April 3, 2013, the EEOC issued an order dismissing plaintiff's 2012 Complaint. *See* Ex. 10 to Defs.' Mot. at 1. On April 30, 2013, the EEOC issued an order dismissing plaintiff's 2011 Complaint. *See* Ex. 2 to Pl.'s Opp'n at 1 [Dkt. #14-2].

The USDA's Motion for Summary Judgment attached affidavits from three State

---

of Deputy Administrator for OFSO. *See* Compl. at ¶ 32.

Department employees assigned to the U.S. Embassy in Yemen, including former Deputy Chief of Mission Angie Bryan, former Ambassador to Yemen Stephen Seche, and former Economic Officer Roland McKay. *See* Compl. at ¶ 62. Each of the affidavits contained statements that were critical of Al-Saffy's performance as Director of the Yemen ATO. *See* Compl. at ¶¶ 62-64. Plaintiff alleges that these negative evaluations were motivated by discrimination based on his race, national origin, and religion, as well as by retaliation for prior EEO activity, and were the reason that he was removed as the Director of the Yemen ATO. *See* Compl. at ¶ 67; Ex. 9 to Defs.' Mot. at 1 [Dkt. #11-3]. Al-Saffy filed a formal complaint on or about July 18, 2013, however the State Department dismissed the complaint in its entirety on October 1, 2013. *See* Compl. at ¶¶ 69-70; Ex. 9 to Defs.' Mot. at 1.

## STANDARD OF REVIEW

Defendant moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff failed to exhaust his administrative remedies with respect to the claims raised in his complaint. Defendant's assertion regarding non-exhaustion of administrative remedies is an affirmative defense that does not raise jurisdictional implications. *See Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (citing *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010)); *Blue v. Jackson*, 860 F. Supp. 2d 67, 72 (D.D.C. 2012). As it is an affirmative defense, the defendant bears the burden of producing evidence demonstrating non-exhaustion.

*Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)). If the defendant carries this burden, the plaintiff must rebut the defendant's evidence or invoke one of the equitable doctrines of waiver, estoppel, or tolling. *See id.*

If a district court refers to materials outside the pleadings in resolving a 12(b)(6) motion alleging non-exhaustion of administrative remedies, it must convert the motion to dismiss into one for summary judgment and provide the parties an opportunity to present evidence in support of their positions. *See* FED. R. CIV. P. 12(d); *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011); *see also Pintro v. Wheeler*, No. 13-0231, 2014 WL 1315976, at *4 n.5 (D.D.C. Apr. 2, 2014) (noting *prior* notice of conversion to summary judgment not necessary when "plaintiff is represented by counsel and has responded to the submission of exhibits with evidence of her own"). "[A] district court can consider a summary judgment motion when it is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 8 (D.D.C. 2010) (quotations and citation omitted).

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the burden is on the movant to show that there is no dispute of material fact, the non-moving party also bears

the "burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Id.* at 255. A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ANALYSIS

As a threshold matter, both parties have had sufficient opportunity to present material evidence beyond the pleadings and contest the discrete, dispositive facts and issues involved in this case. Moreover, both parties have submitted briefs extensively discussing the material facts and issues surrounding plaintiff's claims of discrimination, retaliation, and administrative exhaustion. Plaintiff's Opposition to Defendants' Motion cites USDA administrative documents below and presents additional evidence not found within the four corners of the Complaint. *See* Pl.'s Opp'n & Exhibits [Dkt. #14]. Because plaintiff would not suffer prejudice from the conversion of Defendants' Motion into one for summary judgment, the Court will so proceed.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

2000e-2(a)(1). Title VII similarly prohibits employers from retaliating against an employee because that employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

The "EEOC has established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted). Before an employee may obtain relief under Title VII in federal court, he must exhaust the administrative process for each *discrete* act of discrimination or retaliation he alleges. *See Bowden*, 106 F.3d at 437; *Blue*, 860 F. Supp. 2d at 73; *Pearsall v. Holder*, 610 F. Supp. 2d 87, 95 (D.D.C. 2009). The purpose of the administrative exhaustion requirement is to preserve judicial resources and provide the agency with notice and an opportunity to pursue an administrative resolution. *See Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). Unfortunately for the plaintiff here, he has failed to comply with these "detailed procedures" for all of his EEO complaints, and thus, his claims must fail. How so?

### A. Complaints Against The USDA

After filing an informal complaint on April 15, 2009, plaintiff waited just over a

month before withdrawing the 2009 Complaint on May 22, 2009. *See* Ex. 1 to Defs.' Mot. at 2. Plaintiff never filed a formal complaint with the agency because the USDA reversed course and allowed him to travel to Saudi Arabia. *See id.*; Compl. at ¶ 14. Plaintiff's failure to file the required formal discrimination complaint is fatal to his claims based on the allegations contained in paragraphs 8-14 of the Complaint because he did not exhaust all administrative remedies before filing suit in this Court. *See* 29 C.F.R. § 1614.106(a) ("A complaint *must* be filed with the agency that allegedly discriminated against the complainant.") (emphasis added).

Title VII also includes strict time limitations. Indeed, a civil action challenging an administrative decision must be brought within ninety days after receipt of the final agency action. *See* 42 U.S.C. § 2000e-16(c); *see also Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006) ("Courts apply the ninety-day time limit [for filing a civil action] strictly and will dismiss a suit for missing the deadline by even one day."). "If an agency does not issue a final order within 40 days of receipt of the administrative judge's decision . . . then the decision of the administrative judge shall become the final action of the agency." 29 C.F.R. § 1614.109(i). Unfortunately for the plaintiff, he did not file the Complaint in this case until October 10, 2013, more than ninety days after the respective agency actions became final, and thus, his claims must fail.[2]

---

[2] Because the defendants have clearly demonstrated that Al-Saffy failed to exhaust his administrative remedies, the burden shifts to the plaintiff to show that equitable tolling should apply. *See Bowden*, 106 F.3d at 437. Tolling of the ninety-day time period, however, is only

9

Plaintiff voluntarily requested withdrawal of the 2011 Complaint on March 29, 2013. *See* Ex. 1 to Pl.'s Opp'n. The EEOC issued an order granting dismissal of the 2011 Complaint on April 30, 2013. *See* Ex. 2 to Pl.'s Opp'n at 1. Because the USDA did not issue a final order within forty days of receiving the EEOC order,[3] the dismissal became the final agency action on June 15, 2013, at the latest. *See* 29 C.F.R. § 1614.109(i); Pl.'s Opp'n at 4-5 (admitting USDA *never* issued a final order). Plaintiff was therefore required to file a civil action no later than September 13, 2013. As plaintiff did not file the instant action until nearly a month after the expiration of the ninety day period, his claims as to the 2011 Complaint must also fail. *See* Compl. at ¶¶ 15-36.

Plaintiff's claims related to the 2012 Complaint must suffer the same fate as well. Plaintiff voluntarily requested withdrawal of the 2012 Complaint on March 29, 2013. *See* Ex. 10 to Defs.' Mot. at 2. The EEOC issued an order dismissing the 2012 Complaint on April 3, 2013. *See id.* at 1. Because the USDA, again, did not issue a

---

applied in "extraordinary and carefully circumscribed instances" where the plaintiff has "exercised due diligence and his excuse for the delayed filing must be more than a garden variety claim of excusable neglect." *Wiley*, 436 F. Supp. 2d at 96 (internal quotations and citations omitted). Unfortunately for the plaintiff, that is not the case here. Plaintiff voluntarily withdrew his EEO complaints and the dismissal of his claims became final forty days after the USDA received the EEOC orders. Plaintiff has pled no facts suggesting that the extraordinary remedy of equitable tolling is justified in this case.

[3] For the purposes of calculating when the USDA received the April 30, 2013 EEOC order, the Court has added five days to the date on which the order was issued, resulting in a receipt date of Monday, May 6, 2013.

final order within forty days of receiving the EEOC order,[4] the dismissal became final on May 18, 2013, at the latest. *See* 29 C.F.R. § 1614.109(i); Pl.'s Opp'n at 4-5 (admitting USDA *never* issued a final order). Plaintiff did not file the instant action until nearly two months after the expiration of the ninety day period—August 16, 2013—and thus his claims as to the 2012 Complaint must fail. *See* Compl. at ¶¶ 37-55.

## B. Complaint Against The State Department

Title VII is the sole remedy available to federal employees who have suffered from discriminatory employment practices. *See Brown v. General Services Administration*, 425 U.S. 820, 835 (1976); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983). Title VII, however, only protects against employment discrimination "affecting *employees* or *applicants for employment*" with a federal department or agency. *See* 42 U.S.C. 2000e-16(a) (emphasis added). Plaintiff has never alleged that he was either an employee or applicant for employment with the State Department, nor does he fit within either of the two narrow exceptions for non-employees or -applicants for employment.[5]

Even assuming, *arguendo*, that Secretary Kerry—as head of the State

---

[4] For the purposes of calculating when the USDA received the April 3, 2013 EEOC order, the Court has added five days to the date on which the order was issued, resulting in a receipt date of Monday, April 8, 2013.

[5] Federal courts have recognized two narrow exceptions where a non-employee or -applicant for employment may bring suit against a federal department or agency pursuant to Title VII. The first exception is where the plaintiff is a former employee of a department or agency, and the employer engaged in post-employment retaliatory actions. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). The second exception is where a plaintiff is not a direct employee, but the department or agency nevertheless controls the plaintiff's access to employment, and "den[ies] such access by reference to invidious criteria." *Sibley Mem. Hospital v. Wilson*, 488 F.2d 1338,

11

Department—is a proper defendant in this case,[6] the plaintiff's claims still fail because he did not exhaust his administrative remedies before filing suit in this Court. In order to properly exhaust all administrative remedies as required by 42 U.S.C. § 2000e-16(c), a plaintiff must initially contact an EEO counselor to lodge a complaint *within 45 days* of the alleged violation. *See* 29 C.F.R. § 1614.105. If the complaint cannot be resolved through counseling, a complainant is required to file an administrative complaint with the department's EEO office. *See* 29 C.F.R. § 1614.106(a)-(c).

The conduct forming the basis for the 2013 State Department Complaint took place in August 2010, when plaintiff was removed as Director of the Yemen ATO. *See* Compl. at ¶¶ 59, 62-66. Plaintiff, however, waited almost three years, until April 7, 2013, to initiate contact with the State Department's EEO office. *See* Compl. at ¶ 68. Plaintiff has failed both in establishing that Secretary Kerry is a proper defendant in this action, as well as in exhausting his administrative remedies, and thus his claims as to the 2013 State Department Complaint must fail. *See* Compl. at ¶¶ 58-70.

---

1342 (D.C. Cir. 1973). I find that neither of these exceptions apply to the plaintiff in this case.
[6] Pursuant to the statutory language, the head of the federal department or agency in question is the only proper defendant in an action brought pursuant to Title VII. *See* 42 U.S.C. § 2000e-16(c); *Davis v. Califano*, 613 F.2d 957, 958 n.1 (D.C. Cir. 1980); *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975).

## CONCLUSION

Accordingly, for all of the foregoing reasons, the Court GRANTS summary judgment in favor of defendants. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge